1
2
3
4
5
6                          IN THE UNITED STATES DISTRICT COURT

7                             FOR THE DISTRICT OF ARIZONA

8
   JOSHUA MUSSMAN,                    )
9                                     )
              Plaintiff,              )
10                                    )     No. CIV 05-084-TUC-CKJ
   vs.                                )
11                                    )          **ORDER**
   PIMA COUNTY, et al.,               )
12                                    )
              Defendants.             )
13 _____   )

14         Pending before the Court is Defendants' Motion for Summary Judgment [Doc. #s 13

15 and 15]. Plaintiff has filed a Response/Cross Motion for Summary Judgment [Doc. # 20] and

16 Defendants have filed a Reply.  Oral argument was presented to the Court on December 15,

17 2005.

18

19 *Factual and Procedural Background*[1]

20         On March 17, 2004, the vehicle being driven by Plaintiff Joshua K. Mussman

21 ("Mussman") swerved in the roadway.  Deputy Alvaro Arizpuru ("Arizpuru"), traveling on

22 a motorcycle unit, initiated a traffic stop on the vehicle.  Defendants' Statement of Facts,

23 Exhibit B.  Mussman asserts that he saw police lights, heard a siren, and noticed a law

24 enforcement vehicle behind him.  Mussman pulled his vehicle over.

25         Arizpuru asked Mussman to produce his license and registration for the vehicle.

26 Mussman informed Arizpuru that he had recently been charged with a DUI, did not have a

27 _____

28         [1]Unless otherwise stated, the facts are taken from Plaintiff's statement of facts.

1   regular license, but had a temporary permission to drive.  When Arizpuru asked Mussman

2   if he had any other form of identification with him, Mussman informed Arizpuru that he had

3   an old instructional permit and presented it to Arizpuru.

4          Arizpuru noticed that Mussman had an additional driver's license in his wallet and

5   inquired about that driver's license.  Mussman denied that he had an additional driver's

6   license.  Defendants' Statement of Facts, Exhibit B.[2]  Arizpuru stated that he had seen the

7   second driver's license in Mussman's wallet.  *Id.*  Mussman informed Arizpuru that the

8   additional license was not his, but belonged to his roommate.  Mussman informed Arizpuru

9   that his roommate had asked Mussman to hold the license when they had gone to the gym

10  earlier in the day and that Mussman had forgotten to return the identification to his

11  roommate.

12         Mussman provided the additional license to Arizpuru. Defendants' Statement of Facts,

13  Exhibit B.  The additional license was issued in the name of Joelray Scott Musgrove

14  ("Musgrove").  *Id.*  Arizpuru observed that the pictures and physical descriptions on both

15  licenses were similar to each other and to the driver of the car (Mussman).  *Id.*  The Mussman

16  permit stated in bright red letters "Under 21"; the Musgrove license did not contain such

17  lettering.  *Id.*  Arizpuru stated that he could not determine if Mussman was the person on the

18  second license and that he would have to place Mussman under arrest.  Mussman informed

19  Arizpuru that the vehicle and all of the other paperwork in his possession was in his name

20  (Mussman).  Arizpuru stated that was not sufficient to clarify Mussman's identity or to

21  prevent the arrest.

22         Mussman requested permission to call his father, attorney Michael Mussman, on his

23  cell phone.  After speaking with Mussman, Mussman's father informed Arizpuru that the

24  person in his custody was his son, Joshua Mussman, and requested that Mussman be

25  released.

26

27          [2]The Court notes that, although Mussman does not admit that he initially provided
28  inaccurate information, he has not denied it either.

1   Arizpuru stated that the additional information was insufficient to establish Mussman's
2   identity, but that Mussman's father could come to the scene to identify Mussman if he could
3   be there within five minutes.  Arizpuru also requested Mussman's father to come to the scene
4   to establish his identity – i.e., that he really was Mussman's father. Defendant's Statement of
5   Facts, Exhibit B.  Mussman's father informed Arizpuru it would take him approximately
6   twenty-five minutes to travel to the scene.  Arizpuru stated that Mussman would have to be
7   taken to jail and that he could be released there.

8   Mussman received a citation for Unlawful Use of License in violation of A.R.S. § 28-
9   3478 and Failure to Stay Within Traffic Lane in violation of A.R.S. § 28-729.1

10   Deputy Dowdy transported Mussman to the Pretrial Services Office, which refused
11   to authorize his immediate release.  Mussman was subsequently booked on one count of
12   Unlawful Use of a License.  Mussman's Statement of Facts, Exhibit H.

13   At the Pima County Jail, Mussman provided his social security number and other
14   biographical information.  Mussman's brother arrived at the jail with documentation (e.g.,
15   photograph, mail) showing that Mussman, his brother, and the roommate all lived at the same
16   residence.  Arizpuru refused to review the information and booked Mussman into the jail as
17   a John Doe.  However, Mussman's Statement of Facts, Exhibit H, indicates that Mussman
18   was booked prior to Arizpuru speaking with Mussman's brother.

19   Mussman's brother was unable to post bail to secure Mussman's release because
20   Mussman had been booked into the jail as a John Doe.  Arizpuru informed Pretrial Services
21   workers at the jail that Mussman had not provided any means to determine his identification.

22   Following an appearance before the court, Mussman was ordered to be released at
23   4:00 p.m. the following afternoon.  Mussman was not released until 9:00 p.m.; Mussman was
24   informed that this delay was the result of being booked into the jail as a John Doe.[3]

25   Mussman was horrified by the conditions to which he was subjected to in the jail.  The
26   conditions included the stench of body odor, alcohol, vomit, urine, and feces.  Mussman

27   
_____

28   [3]No foundation is provided for this statement.

1    suffered great fear of the persons in the cells with him, was subjected to explicit sexual
2    comments from a transvestite drug addict, was physically assaulted by the transvestite drug
3    addict, and was terrified of being attacked and, therefore, was unable to sleep.

4        A motion to dismiss the charges based on a lack of reasonable suspicion to stop
5    Mussman's vehicle was denied by Judge Greene of the Pima County Consolidated Courts.
6    A subsequent bench trial resulted in a directed verdict of not guilty of the charge of Unlawful
7    Use of License and not responsible for the charge of Failure to Stay Within Traffic Lane.

8        On February 4, 2005, Mussman filed a Civil Rights Complaint against Pima County,
9    Pima County Sheriff Clarence Dupnik, and Deputy Arizpuru ("Defendants"). The complaint
10   alleges that Defendants deprived Mussman of his civil rights, privileges and immunities as
11   guaranteed under the Fourth, Fifth, Sixth, Eighth, and Fourteen Amendment of the United
12   States Constitution.  Mussman states his claims as Count I:  violation of civil rights under
13   color of state law against individual defendants pursuant to 42 U.S.C. § 1983; Count II:
14   damages under 42 U.S.C. § 1983 against Pima County and Pima County Sheriff Clarence
15   Dupnik for developing, implementing, and maintaining policies or customs which exhibit
16   deliberate indifference to the constitutional rights of persons who are arrested in Pima County
17   and who may be incarcerated in the Pima County Jail, and; Count III:  Defendants violated
18   state law, to wit:  assault and battery, negligent infliction of emotional distress, intentional
19   infliction of emotional distress, and false imprisonment.

20       On September 20, 2005, Defendants filed a Motion for Summary Judgment[4].
21   Mussman has filed a Response/Cross-Motion for Summary Judgment and Defendants have
22   filed a Reply.

23

24   *Defendants' Objections to Plaintiff's Statement of Facts*

25       A motion for summary judgment is to set forth the specific facts (with reference to a
26

27       [4]Defendants initially filed the motion on September 7, 2005, but it did not comply
28   with CM/ECF signature requirements.  Defendants were directed to refile the motion.

specific portion of the record where the fact may be found) on which a party relies separately from the memorandum of law.   Rule 56.1(a), L.R.Civ.   Defendants object to some of Mussman's facts as factually incorrect, hearsay, or beyond the scope of Mussman's knowledge.

Defendants are correct that some of the statements are hearsay or beyond the scope of Mussman's knowledge.   However, it appears that some are not presented for the truth of the matter asserted, but to explain the reaction of Mussman (e.g., transvestite made sexually explicit comments to him – contributes to the fear Mussman was feeling).   The Court will only consider the admissible evidence that is supported by specific facts that may show a genuine issue of material fact.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

*Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure.   The disputed facts must be material. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Therefore, the nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The dispute over material facts must also be genuine.   *Id.*   A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*   A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial.   *Id.*   Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam).   "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*,

1    477 U.S. at 249-50, 106 S. Ct. at 2511.  However, the evidence of the nonmoving party is to

2    be believed and all justifiable inferences are to be drawn in his favor.[5]   *Id.* at 255.

3         The Court is not to make credibility determinations with respect to the evidence

4    offered and is required to draw all inferences in a light most favorable to the non-moving

5    party.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th

6    Cir. 1987), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

7    (1986).   Summary judgment is not appropriate "where contradictory inferences may

8    reasonably be drawn from undisputed evidentiary facts[.]"   *Hollingsworth Solderless*

9    *Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980).

10

11   *Probable Cause to Arrest*

12        Mussman asserts that he was falsely arrested and that his civil rights were violated by

13   Arizpuru's arrest of Mussman without probable cause. 42 U.S.C. § 1983 is not itself a source

14   of substantive rights, but merely provides a method for vindicating federal rights elsewhere

15   conferred.  *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443

16   (1989).  To state a claim under § 1983, a plaintiff must allege:  (1) the violation of a right

17   secured by the Constitution and laws of the United States and (2) the alleged deprivation was

18   committed by a person action under color of state law.  *Balistreri v. Pacifica Police Dept.*,

19   901 F.2d 696, 699 (9th Cir. 1990); *see also Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct.

20   1908, 68 L.Ed.2d 420 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327,

21   106 S.Ct. 662, 88 L.Ed.2d 662 (1986).  Probable cause is a defense to a claim of false arrest

22   under 42 U.S.C. § 1983.  *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288

23   (1987), *overruled on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73

24   L.Ed.2d 396 (1982); *see also Cervantes v. United States*, 330 F.3d 1186 (9th Cir. 2003).

25   Probable cause exists where the facts and circumstances known to the arresting officer are

26

27        [5]The Court resolves all factual disputes in Mussman's favor for purposes of this

28   motion.  *See Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1992).

1    sufficient to warrant a prudent man in believing that the arrestee has committed or is

2    committing an offense.  *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S.Ct. 1302,

3    1310-11, 93 L.Ed. 1879 (1949); *Graves v. City of Coeur D'Alene*, 339 F.3d 828 (9th Cir.

4    2003).

5        In Arizona, an officer is authorized to arrest a person, without an arrest warrant, if the

6    officer has probable cause to believe that a "misdemeanor or a petty offense has been

7    committed and probable cause to believe the person to be arrested has committed the

8    offense." A.R.S. § 13-3883. Here, Arizpuru arrested Mussman for Unlawful Use of License.

9    In Arizona, it is a misdemeanor for a person to "knowingly display, cause or permit to be

10   displayed or have in the person's possession a canceled, revoked, suspended, fictitious or

11   fraudulently altered driver's licence." A.R.S. § 28-3478.  Defendants assert that, because the

12   last digit of the birth date listed on Mussman's instructional permit had been altered/obscured

13   to appear as 02/29/81 rather than 02/29/84, there was probable cause to arrest Mussman for

14   a violation of A.R.S. § 28-3478.   Mussman asserts, however, this is the first time this

15   information has been presented; there is no mention of any alleged alteration of Mussman's

16   instructional permit in Arizpuru's report. However, Arizpuru's "subjective reason for making

17   the arrest need not be the criminal offense as to which the known facts provide probable

18   cause. As [the United States Supreme Court has] repeatedly explained, 'the fact that the

19   officer does not have the state of mind which is hypothecated by the reasons which provide

20   the legal justification for the officer's action does not invalidate the action taken as long as

21   the circumstances, viewed objectively, justify that action.'" *Devenpeck v. Alford*, 543 U.S.

22   146, 125 S.Ct. 588, 594, 160 L.Ed.2d 537 (2004), *quoting Whren v. United States*, 517 U.S.

23   806, 812-13., 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).  Mussman has not disputed that he had

24   what appeared to be an altered instructional permit in his possession.  There was probable

25   cause to arrest Mussman for this violation.

26       Moreover, Arizpuru also had probable cause to believe that Mussman had in his

27   possession a fictitious license.  Mussman had in his possession an instructional permit in one

28   name and a driver's license in another name.  Arizpuru observed that the photographs and

1    physical descriptions on both the instructional permit and driver's license were very similar;

2    moreover, both closely resembled Mussman.  There is no factual dispute that Mussman had

3    both the instructional permit and the driver's license in his possession.  Mussman has not

4    disputed Arizpuru's assertion that Mussman initially provided inaccurate/incomplete

5    information to Arizpuru regarding the driver's license in Mussman's wallet.  There was

6    probable cause for Arizpuru to believe that either the instructional permit or the driver's

7    license was fictitious as to Mussman.

8            Additionally, in Arizona, it is an offense to provide law enforcement agencies "with

9    information one knows is false, fraudulent or unfounded, or a misrepresent[ation] of facts in

10   order to either interfere with the agency's operation or mislead a law enforcement officer."

11   *State v. Terrell*, 168 Ariz. 112, 113, 811 P.2d 364, 365 (App. 1991); *see also* A.R.S. § 13-

12   2907.01.  As previously stated, Mussman had provided inaccurate information to Arizpuru.

13   There was probable cause to arrest Mussman for false reporting.

14           Mussman also asserts that Arizpuru violated department rules and regulations by

15   arresting Mussman.  However, Mussman fails to acknowledge that Arizpuru had probable

16   cause to believe that Mussman had a fictitious license in his possession and determined that

17   Mussman had not provided adequate identification.

18           Mussman further asserts that Arizpuru had a duty to continue investigating the

19   offenses.  However, Mussman has not provided any authority for this assertion.  Rather,

20           a police officer's initial finding of probable cause justifies not only arrest, but a
         reasonable period of continued detention for the purpose of bringing the arrestee
21       before a magistrate.  Generally, once the arrest has been properly effected, it is the
         *magistrate* and not the policeman who should decide whether probable cause has
22       dissipated to such an extent following arrest that the suspect should be released.  We
         do not, however, intimate that a police officer, upon an initial finding of probable
23       cause, may close his eyes to all subsequent developments.  He may not.  Probable
         cause to arrest does not suspend an officer's continuing obligation to act "reasonably."
24       On the other hand, having once determined that there is probable cause to arrest, an
         officer should not be required to reassess his probable cause conclusion at every turn,
25       whether faced with the discovery of some new evidence or a suspect's self-
         exonerating explanation from the back of the squad car.
26
     *Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986), internal citations omitted; emphasis
27
     in original.  The *Thompson* court concluded that a police officer has an affirmative duty to
28

release an arrestee if he ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded. *Id*. Indeed, an officer's failure to "investigate Plaintiff's [defense does] not negate the probable cause for the warrantless arrest in the absence of a showing that [the officer's] initial probable cause determination was itself unreasonable." *Romero v. Fay*, 45 F.3d 1472, 1477-78 (10th Cir. 1995); *see also Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992); *Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 1998) (detective had "no obligation to immediately investigate [plaintiff's] asserted alibi evidence prior to the probable cause hearing"); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (once plaintiff was arrested, the police were not required to investigate further). Here, the Court has determined that Arizpuru had probable cause to arrest Mussman; there has been no showing that the initial determination of probable cause was unreasonable. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Summary judgment in favor of Defendants is appropriate as to the claims of false arrest and constitutional violations based on the arrest.

*Qualified Immunity*

Even if there was not probable cause to arrest Mussman, qualified immunity would require summary judgment on this claim. Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The defense of qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific

1    action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335,

2    341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).  The Court must determine "whether, in

3    light of clearly established principles governing the conduct in question, the officer

4    objectively could have believed that his conduct was lawful." *Watkins v. City of Oakland*,

5    145 F.3d 1087, 1092 (9th Cir. 1998).

6         When qualified immunity is asserted at the summary judgment stage, the court must

7    consider "this threshold question:  Taken in the light most favorable to the party asserting the

8    injury, do the facts alleged show the officer's conduct violated a constitutional right?"

9    *Saucier*, 533 U.S. at 201; *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002).

10   As previously stated, there are no material issues of fact as to whether the officer's conduct

11   violated a constitutional right.  Even if there were material issues of fact, the court would

12   then "ask whether the right was clearly established" such that "it would be clear to a

13   reasonable officer that [his] conduct was unlawful in the situation he confronted." *Saucier*,

14   533 U.S. at 201-202.

15        Any genuine issues of material fact concerning the underlying facts of what the officer

16   knew or what the officer did are questions of fact for the jury.  *Acosta v. City and County of*

17   *San Francisco*, 83 F.3d 1143, 1149 (9th Cir. 1996), citing *Sinaloa Lake Owners Ass'n v. City*

18   *of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).  However, where the essential facts are

19   undisputed, the reasonableness of the officer's actions is properly determined by the court.

20   *Sinaloa Lake Owners Ass'n*, 70 F.3d at 1099; *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th

21   Cir. 1994) ("Even though reasonableness is traditionally a question of fact for the jury,

22   defendant can still win on summary judgment if the district court concludes, after resolving

23   all factual disputes in favor of the plaintiff, that the officer's use of force was objectively

24   reasonable under the circumstances.").  Here, the essential facts are undisputed.  Based on

25   those facts, it would not be clear to a reasonable officer that he did not have probable cause

26   to arrest Mussman for possession of a fictitious license, possession of an altered license, and

27   false reporting.  Moreover, it would not be clear to a reasonable officer that, following the

28   initial probable cause determination, he had a continuing duty to investigate Mussman's

1  defense.   Accordingly, summary judgment based on qualified immunity in favor of

2  Defendants is appropriate on the claims of false arrest and constitutional violations based on

3  that conduct.

4

5  *Constitutional Violation of Supervisor*

6          Mussman asserts that Pima County and Pima County Sheriff Clarence Dupnik

7  violated his rights by developing, implementing, and maintaining policies or customs which

8  exhibit deliberate indifference to the constitutional rights of persons who are arrested in Pima

9  County and who may be incarcerated in the Pima County Jail.   Supervisory officials may be

10  liable if they "implement a policy so deficient that the policy 'itself is a repudiation of

11  constitutional rights' and is 'the moving force of the constitutional violation.'"  *Redman v.*

12  *County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991), cert. denied, 112 S.Ct. 972 (1992)

13  (*quotations omitted*); *see also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (a

14  supervisor may be liable under § 1983 if he "knew of the violations and failed to act to

15  prevent them.").

16          However, Mussman has not alleged any policy expressly sanctioned, enacted, or

17  authorized by Sheriff Dupnik that led to an alleged injury.  *Pembaur v. City of Cincinnati*,

18  475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Ulrich v. City and County of San*

19  *Francisco*, 308 F.3d 968 (9th Cir. 2002).   Moreover, Mussman has not presented any facts

20  to show that his alleged injuries are the result of a municipal custom.  *Id.*, at 481-82, n. 10.

21  Additionally, Mussman has not shown that the alleged constitutional violation is the result

22  of inadequate training such that deliberate indifference is shown.  *City of Canton v. Harris*,

23  489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (inadequacy must be so likely

24  to result in the violation of constitutional rights that the policymaker can reasonably be said

25  to be indifferent to the need).   Mussman has not presented any evidence of, e.g., similar

26  incidents which demonstrate that Sheriff Dupnik knew or should have know of an alleged

27  deficiency in the Sheriff's Department policies.  Mere allegations based solely on a plaintiff's

28  own experience is insufficient to establish liability of a supervisor.  *Trevino v. Gates*, 99 F.3d

1   911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated

2   or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

3   consistency that the conduct has become a traditional method of carrying out policy."); *City*

4   *of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

5   Summary judgment in favor of Defendants is appropriate on this claim.

6

7   *Violations of State Law*

8          Mussman alleges that Defendants violated state law by the commission of the

9   following torts:  assault and battery, negligent infliction of emotional distress, intentional

10  infliction of emotional distress, and false imprisonment.

11         Summary judgment on the federal issue claims being appropriate, this Court does not

12  have subject matter jurisdiction over the state law claims.  Dismissal of the state law claims

13  is appropriate.

14

15         Accordingly, IT IS ORDERED:

16         1.      Defendants' Motion for Summary Judgment [Doc. #s 13 and 15] as to Counts

17  I and II  is GRANTED;

18         2.      Summary judgment in favor of Defendants as to Counts I and II is GRANTED;

19         3.      Plaintiff's Cross-Motion for Summary Judgment [Doc. # 20] is DENIED;

20         4.      Count III is dismissed for lack of subjection matter jurisdiction, and;

21         5.      The Clerk of the Court shall enter judgment accordingly and shall then close

22  its file in this matter.

23         DATED this 3rd day of March, 2006.

24

25         _____

26                      Cindy K. Jorgenson
                      United States District Judge

27

28